IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER NEAL KINGERY, | § | |
| TDCJ #1066564, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3350 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Christopher Neal Kingery has filed a petition for a federal writ of habeas corpus to challenge a state court conviction under 28 U.S.C. § 2254. In support of his petition, Kingery has filed a motion for summary judgment. (Doc. #15). The respondent has filed a cross-motion for summary judgment in response, arguing that Kingery is not entitled to federal habeas corpus relief. (Doc. #16). Kingery has filed a reply and a motion for discovery. (Doc. #17, #18). After considering all of the pleadings, the records, and the applicable law, the Court grants the respondent's motion for summary judgment and dismisses this case for reasons set forth below.

## I.     BACKGROUND

A Texas grand jury returned a felony indictment in case number 855577, charging Kingery with sexual assault of a minor (*i.e.*, statutory rape). In particular, the indictment alleged that on February 15, 2000, Kingery did "unlawfully, intentionally and knowingly cause the penetration of the female sexual organ of . . . the Complainant, a person younger

than the age of seventeen and not his spouse by placing his sexual organ in the female sexual organ of the Complainant." *Clerk's Record*, at 6.  The State enhanced the indictment for purposes of punishment with allegations that Kingery had at least one prior felony conviction for aggravated robbery.  *See id*.  At trial, the State presented evidence that the fifteen-year-old complainant became pregnant as the result of a one-time consensual encounter with her mother's live-in boyfriend (Kingery), who was then thirty-six years of age.  Although the complainant aborted the child, DNA analysis of the fetal tissue indicated that Kingery was the probable father.  A jury in the 180th District Court of Harris County, Texas, found Kingery guilty of sexually assaulting a minor and sentenced him to serve thirty years in prison.

On direct appeal, Kingery complained that the trial court erred by failing to grant his motion for a mistrial after two witnesses referred indirectly to Kingery's criminal record. Finding that a curative instruction ameliorated any harm, the intermediate court of appeals affirmed the conviction in an unpublished opinion.  *See Kingery v. State*, No. 14-01-01134-CR (Tex. App. — Houston [14th Dist.] Nov. 14, 2002).  Subsequently, the Texas Court of Criminal Appeals refused Kingery's petition for discretionary review.  *See Kingery v. State*, PDR No. 2188-02 (Tex. Crim. App. Jan. 22, 2003).  The Texas Court of Criminal Appeals also denied Kingery's application for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure.  *See Ex parte Kingery*, No. 31,541-03 (Jan. 12, 2005).[1]

---

[1]     Kingery has filed another state habeas corpus application to challenge a prior conviction for aggravated robbery that is not at issue here.  *See Ex parte Kingery*, No. 31,541-01.  Kingery
(continued...)

2

Kingery now seeks a federal writ of habeas corpus to challenge his state court conviction under 28 U.S.C. § 2254.  Kingery contends that his conviction is invalid for the following reasons:  (1) he was denied effective assistance of counsel at his trial; (2) he was denied effective assistance of counsel on appeal; (3) his indictment was fundamentally defective; (4) evidence against him was illegally obtained; and (5) the trial court abused its discretion in connection with certain rulings.  Kingery has filed a motion for summary judgment only as to grounds one, two, and four, insisting that he is entitled to prevail on these claims.  The respondent has filed a cross-motion for summary judgment in response, arguing that Kingery is not entitled to relief on any of his claims.  The parties' contentions are discussed below under the governing standard of review.

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman*

---

[1](...continued)
also filed a petition for a writ of mandamus and another motion for a stay in connection with his conviction for sexual assault of a minor, both of which were denied by the Texas Court of Criminal Appeals.  *See Ex parte Kingery*, Nos. 31,541-02 & 31,541-04.

*v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted).  "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The petitioner proceeds *pro se* in this case.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir.

4

1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

### B.    Federal Habeas Corpus Review Under 28 U.S.C. § 2254

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). The pending federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Most of the claims that Kingery presents were raised in his state habeas corpus application, which the Texas Court of Criminal Appeals denied without a written order. A denial of relief by the Court of Criminal Appeals serves as an adjudication on the merits of the claim. *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)), *cert. denied*, 531 U.S. 849 (2000); *see also Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (noting that, under Texas law, a denial of relief rather than a dismissal of the claim by the Court of Criminal Appeals disposes of the merits of a claim). Accordingly, the federal habeas corpus standard of review, as amended by the AEDPA, applies to the petitioner's claims as long as those claims were adjudicated on the merits and not dismissed for procedural reasons.[2] *See Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002) (citing *Valdez v. Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001)); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim on procedural grounds, there has not been an "adjudication on the merits" as contemplated by the AEDPA).

---

[2]     Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  For claims adjudicated on the merits, the AEDPA's amendments provide that a petitioner is not entitled to relief unless the state court's adjudication:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Courts are to review pure questions of law and mixed questions of law and fact under § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).  Under the first ("contrary to") clause, a federal district court may grant habeas relief only if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief only if the state court correctly divined a legal principle from the Supreme Court's jurisprudence, but misapplied that principle to the facts.  *See id*.  A federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief

without a written opinion.  *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law.  *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Section 2254(d)(2) governs pure questions of fact.  *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding.  *See Brewer v. Dretke*, 410 F.3d 773, 775 (5th Cir. 2005) (citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing)).  In addition, any factual findings made by the state court in deciding a petitioner's claims are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence to the contrary."[3]  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  The petitioner's claims are discussed further below under the applicable law.

---

[3]    While it is true that Rule 56 of the Federal Rules of Civil Procedure applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the Fifth Circuit has made clear that Rule 56 applies only to the extent that it does not conflict with the habeas rules. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 2254 Cases in the District Courts).  Therefore, § 2254(e)(1) — which mandates that findings of fact made by a state court are "presumed to be correct" — overrides the ordinary rule that, in a summary-judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  *See id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *See id.*

III.    **DISCUSSION**

A.      **Ineffective Assistance of Counsel at Trial**

Kingery contends that he is entitled to federal habeas corpus relief because he was denied effective assistance of counsel at his trial.  In particular, Kingery complains that his trial attorney was deficient because he committed the following errors: (1) he "withheld" or failed to subpoena certain witnesses; (2) he failed to properly object to the admission of DNA evidence; (3) he failed to adequately cross-examine the complainant; (4) he failed to present the legal defense of marriage; (5) he "withheld" Kingery's testimony; and (6) he "withheld" or failed to present certain items of documentary evidence.  The respondent argues that certain aspects of the first and third claims referenced above are unexhausted because Kingery provides additional facts in support of his federal petition that were not presented on state habeas corpus review.  Because these additional facts were not properly presented to the state courts, the respondent argues that the first and third allegations of ineffective assistance are unexhausted and therefore barred from federal habeas corpus review by the doctrine of procedural default.  Alternatively, the respondent argues that all of Kingery's ineffective-assistance claims are without merit.  These arguments are considered in turn.

1.      **Exhaustion of State Court Remedies**

A federal court may only grant habeas corpus relief to a state prisoner who has exhausted available state remedies, which requires him to fairly present his federal claims to the state's highest court of criminal jurisdiction.  *See* 28 U.S.C. § 2254(b); *Sones v.*

*Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). To exhaust state remedies under the applicable statutory framework, a habeas petitioner must fairly present the substance of his claim to the state courts in a procedurally proper manner.  *See Baldwin v. Reese*, 541 U.S. 27 (2004); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2000) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).  By affording states the first opportunity to review challenges to state court convictions, the doctrine of exhaustion reflects an important policy of federal/state comity. *See Coleman v. Thompson*, 501 U.S. 722, 730-31(1991).

In his state habeas corpus application, Kingery alleged that his counsel failed to subpoena witnesses in support of his defense.  *See Ex parte Kingery*, No. 31,541-03 at 14. He did not specifically identify those witnesses in connection with his first ineffective-assistance claim.  *See id*.  In the memorandum in support of his federal habeas petition, by contrast, Kingery complains that his attorney refused to subpoena several specific individuals, including the complainant's mother, Kingery's employer, an unidentified doctor, and an unidentified nurse. (Doc. #2, at 2).  Therefore, the record confirms that Kingery failed to present these facts in his state habeas corpus application in connection with his first allegation of ineffective assistance of counsel.

Likewise, Kingery alleged in his state habeas corpus application that his counsel failed in general to cross-examine witnesses adequately.  *See Ex parte Kingery*, No. 31,541-03 at 15.  On federal habeas corpus review, Kingery faults his counsel specifically for failing to cross-examine the complainant regarding certain "contradictions" in her testimony.  (Doc. #2, at 4).  Thus, Kingery has presented additional facts on federal habeas corpus review in

10

connection with his third ineffective-assistance claim that were not raised at the state court level.

The exhaustion requirement is not met where the petitioner presents new legal theories or factual claims in his federal habeas petition. *See Finley*, 243 F.3d at 219 (citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982)).  Likewise, "the policies of comity and federalism underlying the exhaustion doctrine" require that "new factual allegations in support of a previously asserted legal theory" be presented first to the state court. *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir.), *cert. denied*, 479 U.S. 1010 (1986); *see also Graham v. Johnson*, 94 F.3d 958, 968-69 (5th Cir. 1996).  The Fifth Circuit has recognized that where a petitioner lodges multiple claims for ineffective assistance of counsel, as the petitioner attempts to do here, each distinct allegation of ineffective assistance must be exhausted. *See Jones v. Jones*, 163 F.3d 285, 296-98 (5th Cir. 1998), *cert. denied*, 528 U.S. 895 (1999).

Kingery does not dispute that he neglected to present the above-referenced facts on state habeas corpus review or that these allegations are unexhausted.  It is well established that "[i]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley*, 243 F.3d at 220 (citing *Coleman*, 501 U.S. at 735 n.1, and *Sones*, 61 F.3d at 416).  Kingery's unexhausted allegations could have been raised in his previous state habeas corpus application.  Accordingly, it is likely that a successive petition would be barred by the Texas abuse-of-the-writ statute. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).  Because

Texas would likely bar another habeas corpus application by the petitioner on this subject, this default represents an adequate state procedural ground which, in turn, bars federal review of his claims. *Finley*, 243 F.3d at 220 (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)).

## 2.  Procedural Default

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997),  *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (explaining that the cause and prejudice standard is "grounded in concerns of comity and federalism"); *Coleman*, 501 U.S. at 750 (recognizing "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them").

Kingery does not demonstrate that the fundamental-miscarriage-of-justice exception applies in this case.[4]   Accordingly, federal habeas corpus review of the merits of his

---

[4]      The fundamental-miscarriage-of-justice exception to the doctrine of procedural default is limited to cases where the petitioner can make a persuasive showing that he is *actually* (continued...)

defaulted claims depends on whether he can demonstrate cause and actual prejudice for his failure to present his claims properly on state habeas corpus review.  The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir.), *cert. denied*, 520 U.S. 1267 (1997).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000), *cert. dism'd*, 531 U.S. 1134 (2001) (citing *Strickler v. Green*, 527 U.S. 263, 119 S. Ct. 1936, 1952 (1999)).

In an effort to establish cause, Kingery attempts to blame his trial and appellate counsel for his failure to properly present his claims in state court.[5]  The record reflects,

---

[4](...continued)
      innocent of the charges against him.  *See Coleman*, 501 U.S. at 750; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.), *cert. denied*, 514 U.S. 1123 (1995). To make this showing the petitioner must prove that, as a factual matter, he did not commit the crime for which he was convicted. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000) (citing *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).  "To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir. 2000) (quoting *Fairman*, 188 F.3d at 644) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)).

[5]      Ineffective assistance of counsel can constitute cause in certain circumstances.  *See Edwards*
(continued...)

however, that Kingery was not represented by counsel on state habeas corpus review. Although Kingery filed his state habeas corpus application without the aid of counsel, it is well established that neither indigence nor *pro se* status constitutes cause for a petitioner's procedural default.   *See, e.g., McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995) (recognizing that a petitioner's *pro se* status is not an objective external factor which qualifies as cause for failure to raise a claim) (citing *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992)).   Kingery points to no other objective factor external to his defense which prevented his compliance with state procedure. Likewise, for reasons discussed fully below, Kingery fails to demonstrate actual prejudice by establishing that any of the unexhausted ineffective-assistance claims are valid.   The Court concludes therefore that the first and third ineffective-assistance claims raised by Kingery are barred from federal habeas corpus review by the doctrine of procedural default.   Alternatively, for reasons set forth below, Kingery fails to establish that any of his ineffective-assistance claims merit federal habeas corpus relief.

---

[5](...continued)
*v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488-489 (1986).   Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Id*. In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. *Id.*  Kingery has not raised a discrete ineffective-assistance claim on federal habeas review concerning the alleged deficiencies that purportedly caused a procedural default.  Likewise, Kingery did not raise such a claim on state habeas corpus review.  An unexhausted ineffective assistance claim "must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at 452 (quoting *Carrier*, 478 U.S. at 489).  More importantly, however, none of Kingery's ineffective-assistance claims have merit for reasons discussed further below.  It follows that ineffective assistance does not count as cause for a procedural default committed in this case.

14

### 3.    Kingery's Ineffective-Assistance Claims are Without Merit

The state habeas corpus court reviewed Kingery's allegations of ineffective assistance of counsel and considered a lengthy affidavit from his appointed trial attorney, Jeff Hale. Based on this review, the state habeas corpus court concluded that Hale's detailed affidavit was credible and that Kingery failed to show that he was denied effective assistance of counsel at his trial.  *See Ex parte Kingery*, No. 31,541-03 at 125.  Whether counsel was ineffective presents a mixed question of law and fact.  *See Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002). To the extent that the state court's decision constitutes an adjudication of those claims that Kingery adequately presented, Kingery must show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must satisfy the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both of the following: (1) that his counsel's performance was deficient; and (2) that the deficiency prejudiced his defense. Failure to prove either prong of the *Strickland* test will defeat an ineffective-assistance claim.  *See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998)).

15

To establish deficient performance under the *Strickland* test, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption  that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005).  Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined.  *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).  Kingery's claims are examined below under the *Strickland* standard.

### a.      Failure to Subpoena Witnesses

Kingery complains that his counsel was deficient because he failed or refused to issue witness subpoenas for the complainant's mother, Kingery's employer, and for an unidentified doctor and nurse.  (Doc. #2, at 2).  Kingery does not allege or show that these witnesses would have testified on his behalf.  More importantly, Kingery does not disclose what their testimony would have been or how it would have benefitted his defense.

The Fifth Circuit has emphasized that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have

16

testified are largely speculative." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations omitted).  Where the only evidence of a missing witness' testimony is from the defendant, claims of ineffective assistance are inherently suspect and must be viewed "with great caution."  *Id.*  Therefore, to demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context a habeas corpus petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  Absent affidavits (or equivalent proof) from any of the above-referenced witnesses, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance on his trial counsel's part or resulting prejudice.  *See Sayre*, 238 F.3d at 636.

Kingery presents nothing more than his own speculation that the above-referenced witnesses would have testified on his behalf and that their testimony would have been favorable so as to alter the final outcome.  This is insufficient to show deficient performance on counsel's part or to show that Kingery suffered requisite actual prejudice.   Thus, Kingery's allegations concerning the above-referenced uncalled witnesses do not establish a violation of the Sixth Amendment right to counsel.  Likewise, to the extent that the state court rejected his claim, Kingery fails to demonstrate that its decision was contrary to, or involved an unreasonable application of, the holding in *Strickland*.  Accordingly, Kingery fails to establish that he is entitled to federal habeas corpus relief on this claim under pre- or post-AEDPA standards.

> **b.      Failure to Properly Object to the DNA Evidence**

Kingery contends further that his counsel was deficient for failing to properly object to the admission of DNA evidence from the fetal tissue that was preserved following the complainant's abortion, which occurred at a clinic in Florida where her grandparents reside. Kingery argues that his counsel should have objected to the role played by the complainant's grandmother in ensuring that the fetal tissue was preserved as evidence. Kingery complains that the fetal tissue was not stored or processed properly and that it was secured and sent to a laboratory in Houston, Texas, without a warrant or a court order in violation of Florida law.

According to the testimony presented at trial, the complainant's grandmother asked clinic workers to preserve a sample of the fetal tissue and they did so. *Court Reporter's Record*, vol. 3, at 41; vol. 4, at 67. Subsequently, Officer Robert Walker, a "crime scene investigator" with the Lee County Sheriff's Department in Florida, retrieved the sample from the clinic at the request of a detective with the Harris County Sheriff's Department in Houston. *Court Reporter's Record*, vol. 3, at 55-58. After securing this evidence from the clinic, Officer Walker packed the tissue sample in dry ice, sealed the container, and forwarded it to the Harris County Medical Examiner's Office by Federal Express. *Court Reporter's Record*, vol. 3, at 58. DNA analysis was performed on the tissue sample in an effort to establish paternity. *Court Reporter's Record*, vol. 4, at 179.

The record shows that Kingery's counsel did object prior to the admission of DNA test results. He moved to suppress the DNA evidence on several grounds. Noting that the tissue was sent to the Houston Crime Lab from Florida by Federal Express, he objected that the chain of custody was not adequately preserved and that the evidence was inadmissible

under Texas law as a result.  *Court Reporter's Record*, vol. 4, at 161-68.  Kingery's counsel objected further that the evidence was illegally obtained without the requisite warrant or court order in violation of Florida law.  *See id.* at 169-74.  After hearing argument from both sides, the trial court denied the motion to suppress and admitted the evidence.  *See id.* at 175. Following the suppression hearing, a doctor testified that DNA analysis of the fetal tissue sample established a probability of 99.8 percent that Kingery was the father of the complainant's unborn child.  *See id*. at 179.

In his affidavit to the state habeas corpus court, Kingery's counsel explained that he did not raise an objection under the Fourth Amendment to the United States Constitution because Kingery lacked standing to challenge the seizure of evidence taken from the complainant.  *See Ex parte Kingery*, No. 31,541-03 at 118.  Counsel knew that Kingery was "upset that the complainant's grandmother apparently was intimately involved in the collection of that evidence."  *Id.*  According to his affidavit, Kingery's counsel cross-examined all parties regarding that involvement and did the best that [he] could to make use of her involvement to assist [Kingery's] case."  *Id.*

Kingery does not specifically attack this decision regarding his counsel's chosen course of cross-examination.  Instead, he complains that his counsel should have raised other objections to the admissibility of the DNA evidence.  Kingery cites portions of the Texas Government Code regarding the collection of biological specimens by law enforcement. (Doc. #2, at 3).  Kingery does not, however, demonstrate that these provisions applied in this

19

instance.  Nor does he propose any other meritorious objection that his counsel could have, but did not, raise in an effort to keep the DNA evidence from the jury.

"Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, Kingery fails to demonstrate deficient performance or actual prejudice.  *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.") (quoting *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990), *cert. denied*, 498 U.S. 1033 (1991)).  It follows that Kingery fails to demonstrate that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, the standard in *Strickland*. Accordingly, Kingery fails to establish that he is entitled to federal habeas corpus relief under the applicable standard.

### c.    Failure to Adequately Cross-Examine

Kingery complains that his counsel was deficient for failing to adequately cross-examine the complainant about one or more inconsistent statements that she made prior to trial in an "affidavit of non-prosecution" and another notarized statement in which she denied that Kingery was the father of her unborn child.  Kingery contends that these statements were evidence that her grandparents engaged in "abusive criminal activity" by threatening the complainant if she did not testify against Kingery.

In his affidavit to the state habeas corpus court, Kingery's counsel explains that he had in his possession copies of sworn statements by the complainant along with "love letters" to Kingery from the complainant.  *See Ex parte Kingery*, No. 31,541-03 at 119-20. Kingery's counsel believed that the documents could cut both ways against his client.  *See id*.  On the one hand, the statements and letters could establish that their relationship was consensual and that the complainant harbored no ill-will against Kingery.  *See id*.  On the other hand, the statements and letters tended to show that Kingery was continuing a relationship with an underage girl even after he was incarcerated on charges of having sex with a minor.  *See id*.  Counsel concluded, therefore, that these documents could do more harm than good.

The record shows that the prior inconsistent statements made by the complainant were introduced at trial.  The State introduced them during her direct examination.  When questioned about them, she explained that she had feelings for Kingery and that she didn't want him to get in trouble.  *Court Reporter's Record*, vol. 3, at 17.  After the complainant learned that she was pregnant she was reluctant to identify the baby's father.  *See id*. at 18.  At first, the complainant "made up someone" else because she did not want to identify Kingery.  *Id.* at 21.  Eventually, however, she told her grandfather, who called the police. *See id*. at 21-23.  After she returned to Texas from Florida, the complainant told detectives with the Harris County Sheriff's Office the same lie.  *See id*. at 27.  She denied that Kingery was the father and "made up" the name of another boy because she didn't want Kingery to go to jail.  *Id.*  The complainant explained that she lied because she still had feelings for

21

Kingery and she felt that her grandparents had "pressured" her. *Id.* at 32. When confronted with DNA analysis of the fetal tissue showing that Kingery was the father, however, the complainant admitted having sexual intercourse with him at her mother's house in February of 2000, and that she had lied about it to protect him. *See id.* 35-36.

The record reflects that Kingery's counsel carefully and thoroughly cross-examined the complainant about several issues. Kingery's counsel questioned the complainant about the extent of her relationship with her grandparents and their influence over her life. The complainant testified, for example, that her mother was "not so well off," whereas her grandparents had means, owned a yacht, and had offered to pay for her college education. *Court Reporter's Record*, vol. 3, at 41-43. Kingery's counsel questioned the complainant about the inconsistent statements that she had made. She testified on cross-examination that it was her grandparents' idea to contact the police and that it was their idea to preserve the fetal tissue evidence following her abortion. *See id.* at 44-51.

Decisions about cross-examination are a matter of trial strategy. Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). It is well established in this Circuit that "[a] conscious and informed decision on trial tactics and

22

strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

Any questioning of the underage complainant in this case required a great deal of tact. Kingery fails to allege or show what other questions his counsel could have asked the complainant or how additional cross-examination regarding her prior inconsistent statements would have benefitted his case.  Kingery does not otherwise demonstrate that the cross-examination strategy undertaken by his counsel was so ill chosen that it rendered the entire trial unfair.  Thus, Kingery fails to establish that his counsel's strategy was deficient or that he suffered any actual prejudice as the result of his counsel's cross-examination of the complainant.  Absent a showing of deficient performance or actual prejudice, Kingery's allegations do not establish a violation of the Sixth Amendment right to counsel.  To the extent that the state court rejected this claim, Kingery fails to demonstrate that its decision was contrary to, or involved an unreasonable application of, the *Strickland* test. Accordingly, Kingery fails to establish that he is entitled to federal habeas corpus relief under pre- or post-AEDPA standards.

d.      **Legal Defense of Marriage**

Kingery contends that his counsel was deficient for failing to present the affirmative legal defense of marriage.  As noted above, the grand jury indictment alleged that Kingery did "unlawfully, intentionally and knowingly cause the penetration of the female sexual organ of . . . the Complainant," who is described as "a person younger than the age of seventeen and not his spouse . . . ." *Clerk's Record*, at 6.  Noting that it is a legal defense to charges of statutory rape where the defendant and the complainant are legally married, Kingery contends that his counsel was deficient for failing to argue that he and the complainant were married as a matter of common law.  This claim is without merit.

In his affidavit to the state habeas corpus court, Kingery's counsel explained that he did not seriously pursue the defense of marriage because he did not believe Kingery could meet the legal requirements for showing that he and the complainant were legally married under Texas law:

> Prior to the trial, [Kingery] and I talked about [marriage] as a possible defense. He stated that the two of them were never ceremonially married.  We talked about the concept of common law marriage and its requirements.  Based on our discussions, I did not believe that [Kingery] would fit the legal criteria for a common law marriage.  When I explained why, [Kingery] informed me that he could change his testimony to say that they were common law married.  I explained to him that if he were going to perjure himself before the court, I would have to withdraw immediately and might very likely have to reveal the perjury to the court.  I agreed to ask the complainant about whether she believed they were common law married and see where her testimony went as a possible line of defense.  To my recollection, the complainant testified there was never any consideration of a common law marriage or a ceremonial marriage.

*Ex parte Kingery*, No. 31,541-03 at 119.  Counsel emphasized further that he elected not to pursue the defense because he did not believe Kingery and the complainant had a valid marriage and because any such suggestion would likely prejudice him in front of the jury:

> From the time [Kingery] mentioned marriage as a defense, I was doubtful that it would be useful.  In the first place, I believed a jury would be leery of anything short of a ceremonial marriage [or] a marriage certificate as simply made up for a defense ploy.  Furthermore, the facts that [Kingery] had given me did not support a common law marriage defense.  I was also troubled by his readiness to change his testimony to suit him.  I was fearful that [Kingery] would either perjure himself or change his testimony in front of the jury so dramatically it would hurt his case rather than help it.

*Id.* at 119.  The record confirms counsel's assessment about whether Kingery had a viable defense to the charges based on a common law marriage.

Testimony at trial shows that Kingery and the complainant were not formally married, that they did not contemplate marriage, and that they did not hold themselves out as married.  The complainant acknowledged during her direct testimony that Kingery was her mother's live-in boyfriend when the sexual encounter occurred.  (*Court Reporter's Record*, vol. 4, at 8, 12).  After she and Kingery had sexual intercourse in February of 2000, the complainant moved to Florida to live with her grandparents.  (*See id*. at 19).  During cross-examination, Kingery's counsel asked the complainant if she and Kingery were ever married.  (*See id*. at 50).  She confirmed that they were never married and added that they had not discussed it.  (*See id*.).  She testified further that they had never represented to anyone else that they were married.  (*See id*.).

In Texas, proof of an informal or "common law" marriage requires:  (1) a declaration of their marriage that has been signed by both parties as provided by the Texas Family Code;

or (2) "the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." TEX. FAM. CODE § 2.401.  Even if all of these elements are satisfied, it is a fundamental prerequisite to common law marriage in Texas that both parties must have legal capacity to marry.  *See Villegas v. Griffin Indus.*, 975 S.W.2d 745, 750 (Tex. App. — Corpus Christi 1989, pet. denied) (citations omitted).  An amendment to the Texas Family Code in 1997 plainly provides that a person under the age of 18 may not be a party to an informal marriage. *See* TEX. FAM. CODE § 2.401(c)(1).  Because it is undisputed that the complainant was under the age of eighteen when the alleged sexual encounter occurred and the encounter took place in 2000, she lacked the legal capacity at that time to enter into an informal or common law marriage.  This is fatal to Kingery's argument that he had a valid legal defense of marriage.

Significantly, the issue whether Kingery and the complainant had a common law marriage has been resolved against Kingery in another state court proceeding.  In a thinly veiled effort to establish the defense of marriage on his own, Kingery filed a *pro se* petition for a divorce from the complainant, seeking dissolution of the alleged informal marriage. The state trial court granted summary judgment for the complainant, finding that the parties never entered into a ceremonial or common law marriage.  An intermediate appellate court affirmed the trial court's decision in a published opinion, concluding that the complainant lacked legal capacity to enter into a common law marriage and rejecting all of Kingery's

arguments to the contrary. *See Kingery v. Hintz*, 124 S.W.3d 875 (Tex. App. — Houston [14th Dist.] 2003, no pet.).

A state court's interpretation of state law binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, — U.S. —, 126 S. Ct. 602, 604 (2006) (citations omitted). Moreover, because the invalidity of the petitioner's alleged marriage was fully litigated in a state court proceeding outside the context of collateral review,[6] the doctrine of res judicata bars any further litigation of this issue. *See United States v. Stiefel*, 207 F.3d 256, 259-60

---

[6]    The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion. *See Test Masters Educational Svcs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000)). Under res judicata or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 125 S. Ct. 2491, 2500 n.16 (2005) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citations omitted)). Under collateral estoppel or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.*

Historically, principles of res judicata and collateral estoppel have not applied in habeas corpus proceedings. *See Fay v. Noia*, 372 U.S. 391, 423 (1963); *Sanders v. United States*, 373 U.S. 1, 7 (1963) (citations omitted). Thus, at common law "there was no limit on the number of times a prisoner might attempt to obtain relief via habeas corpus" because the doctrines of res judicata and collateral estoppel were not applicable in habeas proceedings. *Hardwick v. Doolittle*, 558 F.2d 292, 295 (5th Cir. 1977) (citing *Sanders*, 373 U.S. at 7-14). More recently, federal habeas corpus statutes have restricted review of state court convictions under a qualified form of res judicata. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing the concept of finality and restrictions found in federal habeas corpus statutes amended by the AEDPA). Limits on the applicability of res judicata principles, however, appear to extend only to a decision refusing to discharge a prisoner from unlawful confinement. *See Salinger v. Loisel*, 265 U.S. 224, 230-31 (1924). There is no reason that the rule of res judicata would not apply to a state court decision that is not related to the review of a conviction such as the state court divorce proceeding initiated by the petitioner in this instance.

27

(5th Cir. 2000) (citing *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994) ("[I]ssue preclusion prohibits a party from seeking another determination of the litigated issue in the subsequent action.")).

Based on this record, Kingery fails to show that he had a valid defense based on a theory that he and the complainant were legally married at common law. Absent a showing that counsel failed to raise a valid defense, Kingery does not establish deficient performance or actual prejudice as the result. To the extent that the state court on habeas review rejected his claim, Kingery does not demonstrate that the state court's adjudication was contrary to, or involved an unreasonable application of, the *Strickland* standard. Accordingly, Kingery is not entitled to federal habeas corpus relief on this issue.

### e. "Withholding" Kingery's Testimony

In a related claim, Kingery faults his counsel for "withholding" testimony by Kingery during the guilt/innocence portion of the trial. A criminal defendant has a fundamental constitutional right to testify on his own behalf. *See Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (citation omitted). This right is granted to the defendant personally and not to his counsel. *See id*. The Fifth Circuit has recognized that a defendant may waive his right to testify, and that defendants frequently do so on the advice of counsel. *See id*. Thus, there is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify — even if the defendant decides later, in hindsight, that he should have testified. *See id.* Instead, a violation of this right occurs only if the "final decision that [the defendant] would not testify was made against his will." *Id.*

28

(quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 990), *rehearing granted*, 953

F.2d 1525 (11th Cir.), *cert. denied*, 506 U.S. 842 (1992)).

The record does not support Kingery's claim that his counsel interfered with his right

to testify.   In his affidavit to the state habeas corpus court, counsel explained that he

discussed whether Kingery should testify and that he advised against it:

> [W]e talked several times bout [Kingery] testifying.  These conversations took
> place during meetings at the Harris County Jail. [Kingery] never openly
> expressed a desire to testify.  Generally, we would talk about the possibility
> of him testifying, I would explain what I believed to be the up and downsides
> and we would agree that it would be best for him not to testify.  During the
> course of the trial, there was one time he expressed a strong desire to testify.
> I had told [Kingery] all along that one of the great hurdles we had to overcome
> was the DNA evidence against him.  I had just completed a long and thorough
> cross-examination of the DNA expert and the State had rested its case.  In the
> holdover cell in the back, [Kingery] told me he wanted to get on the stand.  I
> asked him what he wanted to testify to and he said he was going to testify he
> never had sexual intercourse with the complaining witness. I told him this was
> a dramatic turnaround and asked why he had never mentioned it before.  He
> said that he thought the jury had a doubt based on my cross-examination and
> he wanted to try and convince them they [*i.e.*, Kingery and the complainant]
> never had sex. I asked him if he had not been truthful when, on multiple
> occasions in the past, he had told me he did have sexual intercourse with the
> complaining witness.  [Kingery] stated no, he had sexual intercourse with her,
> but was going to testify that he didn't.   I again explained to him the
> consequences of perjuring himself and told him I could not allow it and he
> rather sullenly stated that he understood.

*Ex parte Kingery*, No. 31,541-03 at 120. According to the pleadings, Kingery complains that

his counsel advised him "many times, many ways" not to take the witness stand.  (Doc. #2,

at 5).   To the extent that Kingery did not take the witness stand based on his counsel's

advice, he cannot show that he was denied his constitutional right to testify. *See Jordan*, 34

F.3d at 312.  Nor does Kingery demonstrate that his counsel's advice with regard to this

issue was constitutionally deficient.  In that respect, the affidavit provided by Kingery's counsel reflects that Kingery planned to take the stand and lie.  "[A] defendant's right to testify does not include a right to commit perjury[.]"  *United States v. Dunnigan*, 507 U.S. 87, 96 (1993).  It follows that defense counsel is not ineffective for refusing to suborn untruthful testimony.  *See Nix v. Whiteside*, 475 U.S. 157 (1986).

Even assuming that counsel was somehow deficient for interfering with Kingery's right to testify, Kingery fails to demonstrate actual prejudice.  In that regard, Kingery does not point to a version of the proposed testimony that he would have given if he had taken the witness stand during the guilt/innocence phase of the trial.  Likewise, in light of the evidence against him, Kingery fails to show how his testimony would have made a difference in the outcome of the proceedings.  *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("Considering the overwhelming evidence of [defendant's] guilt, we cannot conceive of anything [defendant] could have said that would have provided *any* reasonable possibility of a different outcome."); *see also United States v. Mullins*, 315 F.3d 449, 456-57 (5th Cir. 2002) (holding that, even where a counsel's performance was found deficient for failing to honor his client's request to testify, there was no valid ineffective-assistance claim absent a showing of actual prejudice); *United States v. Willis*, 273 F.3d 592, 598-99 (5th Cir. 2002) (same).

Kingery has not established that his counsel's performance was deficient with regard to his right to testify or that he was actually prejudiced as a result.  Absent a showing of deficient performance or actual prejudice as a result, Kingery fails to demonstrate a valid

30

claim of ineffective assistance of counsel in connection with his right to testify.  To the extent that the state court rejected his claim, Kingery further fails to establish that this decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Kingery is not entitled to federal habeas corpus relief on this claim.

### f.  Failure to Present Documentary Evidence

Kingery argues that his counsel was deficient for failing to present the following items of "obtainable" documentary evidence: (1) a report from the United States Coast Guard; (2) a report from the Lee County [Florida] Sheriff's Department; (3) a police report from Port St. Luci, Florida; (4) an affidavit of non-prosecution from the complainant; (5) a Harris County Jail visitation list and phone record; (6) letters from the complainant; and (7) a notarized statement by the complainant.  Kingery alleges that items 4, 6, and 7 were in his possession and that the rest of the information was readily obtainable, but that his counsel did not introduce these documents at trial.

As noted above, Kingery's counsel did make use of the affidavit of non-prosecution and a notarized statement by the complainant during his cross-examination.  In his state court affidavit, Kingery's counsel explains that he was aware of the other documents but concluded that their value to the defense was limited.  *See Ex parte Kingery*, No. 31,541-03 at 120-21.  In that respect, he reviewed several law enforcement reports that were contained in the District Attorney's case file.  *See id.* at 120.  Kingery reportedly did not discuss with his counsel the alleged importance of the above-referenced law enforcement reports.  *See id.*

at 120. Kingery likewise fails to disclose their importance in his pleadings on federal habeas corpus review. In that respect, he does not articulate what the reports show or how they would have helped his defense. Thus, his allegation that his counsel provided ineffective assistance with respect to these documents is conclusory and does not merit federal habeas corpus relief.[7]

Based on this record, Kingery fails to establish deficient performance or actual prejudice as the result of his counsel's representation. Therefore, he fails to demonstrate a valid claim of ineffective assistance of counsel. Kingery does not establish that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, the *Strickland* standard. Accordingly, Kingery is not entitled to federal habeas corpus relief on this issue.

### B.    Ineffective Assistance of Counsel on Appeal

Kingery complains that he was denied effective assistance of counsel on appeal because his appointed attorney: (1) refused to present his *pro se* motion for new trial to the trial court for a ruling; and (2) raised only one issue on appeal. The state habeas corpus court rejected Kingery's claim that he received ineffective assistance of counsel on appeal. *See*

---

[7]    *See, e.g., Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)), *cert. denied*, 537 U.S. 1084 (2002); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).

*Ex parte Kingery*, No. 31,541-03.  Kingery does not demonstrate that he is entitled to federal habeas corpus relief under the governing statute found at 28 U.S.C. § 2254(d)(1).

Complaints of ineffective assistance on appeal are also governed by the above-referenced *Strickland* standard which requires a showing of deficient performance and actual prejudice.  To establish that appellate counsel's performance was deficient in the context of an appeal, a defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  If he succeeds in showing a deficiency, a petitioner then must demonstrate that he was actually prejudiced by his counsel's errors.  *See id.* at 285-86 (noting that, where, as here, the defendant has received appellate counsel, there is no reason to presume the defendant has been prejudiced); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).  To establish actual prejudice, the defendant must show a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal."  *See Robbins*, 528 U.S. at 285.  Kingery fails to show that his appellate attorney was deficient or that he was actually prejudiced in this instance for reasons discussed further below.

### 1.      Failure to File the *Pro Se* Motion for New Trial

Kingery complains that his appellate attorney was deficient for failing to file his *pro se* motion for new trial with the trial court for a ruling.  The state habeas corpus court rejected this claim, observing that Kingery's *pro se* motion for new trial did not require consideration because defendants are not entitled to hybrid representation.  *See Ex parte*

*Kingery*, No. 31,541-03 at 124 (citing *Rudd v. State*, 616 S.W.2d 623, 625 (Tex. Crim. App. 1981). Kingery cites no authority showing that this holding was incorrect or establishing that he had a right to file the *pro se* motion at issue.

The Supreme Court has recognized that, along with ensuring the right to effective assistance of counsel, the Sixth Amendment implicitly guarantees the correlative right of a criminal defendant to waive the assistance of counsel and represent himself at trial.  *See Faretta v. California*, 422 U.S. 806, 819 (1975).  It is well established, however, that a criminal defendant has no constitutional right to hybrid representation, "partly by counsel and partly by himself." *Neal v. Texas*, 870 F.2d 312, 315-16 (5th Cir.1989) (citing *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir.1978)); *see also McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) ("*Faretta* does not require a trial judge to permit 'hybrid' representation . . . ."); *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996) (observing that "there is no constitutional right to hybrid representation").

Kingery does not dispute that he was represented by counsel at trial and on appeal. Likewise, the record does not indicate that Kingery ever requested or received leave to proceed *pro se*.  Accordingly, Kingery he did not have a right to hybrid representation or a right to submit *pro se* pleadings.  Absent such a right, Kingery does not demonstrate that his appellate counsel's performance was deficient for failing to file the *pro se* motion for new trial on his behalf.  Moreover, Kingery does not establish that, had the motion for new trial been filed, the outcome of his proceeding would have been different.  Absent a showing of deficient performance or actual prejudice, Kingery fails to demonstrate that the state court's

decision to reject this claim was contrary to, or involved an unreasonable application of, the *Strickland* standard. Accordingly, Kingery is not entitled to federal habeas corpus relief on this issue.

### 2.    Failure to Raise Additional Issues on Appeal

Kingery complains that his appellate attorney was deficient because she raised only one issue on appeal. Kingery argues that his attorney's performance was so deficient that he was, in effect, denied his right to appeal. The state habeas corpus court rejected this claim, concluding that Kingery was not denied his right to appeal and that he did not establish that his counsel's performance was objectively unreasonable. *See Ex parte Kingery*, No. 31,541-03 at 124-25.

Counsel need not raise every nonfrivolous ground of appeal, but should instead present "[s]olid, meritorious arguments based on directly controlling precedent." *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (citing *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999)). Kingery does not identify any non-frivolous claims that his counsel could have, but did not, raise on appeal. (Doc. #2, at 9-10). Because he does not establish deficient performance or actual prejudice, Kingery fails to show that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, the *Strickland* standard. Therefore, Kingery is not entitled to federal habeas corpus relief on this issue.

### C.     Defective Indictment

Kingery contends that he is entitled to federal habeas corpus relief because his indictment was "invalid or defective."  The state habeas corpus court rejected the claim for procedural reasons because the indictment was not challenged by a pre-trial motion to quash as required by Texas law. *See Ex Parte Kingery*, No. 31,541-03.  Noting that this claim was dismissed for procedural reasons, the respondent argues that this claim is barred by the doctrine of procedural default.  Alternatively, the respondent argues that Kingery's claim is without merit.

#### 1.     Procedural Default

Kingery does not dispute that the indictment was never challenged with a pre-trial motion to quash or that a procedural default occurred as a result.  Kingery does not demonstrate cause for his failure to file a pre-trial motion to quash the indictment.  Even assuming that there was cause in this instance, Kingery does not demonstrate that he will suffer actual prejudice because, for reasons explained below, he fails to show that the indictment was defective.  Because Kingery fails to fit within an exception to the procedural bar, this claim is precluded from federal habeas corpus review.

#### 2.     Kingery's Indictment was not Defective

In the alternative, even assuming that Kingery's claim was not procedurally barred, he fails to show that federal habeas corpus relief is warranted because of defects in the indictment.  It is settled that the sufficiency of a state charging instrument "is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that

36

the convicting court had no jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir.), *cert. denied sub nom. Williams v. Scott*, 513 U.S. 854 (1994) (citations omitted).  Kingery falls far short of the requisite showing here.

The indictment in this case alleged that, on or about February 15, 2000, Kingery "did then and there unlawfully, intentionally, and knowingly cause the penetration of the female sexual organ of . . . the Complainant, a person younger than seventeen years of age and not his spouse by placing his sexual organ in the female sexual organ of the Complainant." *Clerk's Record*, at 6.  The indictment accurately tracks the Texas statute that governs the offense of statutory rape or sexual assault where a minor is involved.  *See* TEX. PENAL CODE ANN. § 22.011.  Absent a showing that there was a defect in the indictment, he is not entitled to federal habeas corpus relief.

Kingery maintains that the indictment was defective because he had a "legal defense" to the charges because the complainant was his "spouse" under Texas common law.  For reasons set forth above, Kingery has failed to establish that the defense of marriage applied in this case.  More importantly, the existence of a defense to criminal liability does not establish that the indictment was facially defective.  As this analysis shows, Kingery's claim concerning the validity of his indictment is without merit.

### D.    Illegally Obtained Evidence

Kingery complains that his conviction was based on evidence that was obtained illegally.  He refers to the fetal tissue that was preserved following the complainant's abortion at a Florida clinic and turned over to law enforcement "without a warrant or court

order."  Kingery argues that this evidence was illegally obtained in violation of the Fourteenth Amendment and the Fourth Amendment to the United States Constitution.[8] Because Kingery did not present either claim on direct appeal or on state habeas corpus review, the respondent argues that the procedural bar applies.  Alternatively, the respondent argues that Kingery fails to demonstrate that either claim merits federal habeas corpus relief.

### 1.    Procedural Default

The record shows that Kingery attempted to raise a somewhat similar claim on state habeas corpus review regarding the factual insufficiency of the evidence.  There, he argued that without the fetal tissue evidence that was illegally obtained from the Florida clinic his conviction was not supported by adequate proof.  Kingery does not dispute, however, that he failed to raise claims under the Fourth or the Fourteenth Amendment before the state courts.  Kingery's failure to present these theories to the state courts means that they are unexhausted.  For reasons discussed above, Kingery has failed to demonstrate cause for his procedural shortcomings or to establish that he fits within any recognized exception to the procedural bar.   Therefore, Kingery's claims based on the Fourth and Fourteenth Amendment are procedurally barred from federal habeas corpus review.  The Court concludes, in the alternative, that neither claim has merit for reasons set forth briefly below.

---

[8]      Kingery also complains that the evidence was obtained in violation of his Sixth Amendment right to effective assistance of counsel.  This allegation is without merit for reasons set forth above in connection with Kingery's allegations concerning his counsel's purported failure to properly object to the admission of DNA evidence from the fetal tissue recovered from the Florida clinic where the complainant had an abortion.

38

### 2.   Fourteenth Amendment

Kingery complains that the fetal tissue evidence was obtained in violation of his right to equal protection under the Fourteenth Amendment.  (Doc. #2, at 14-15).  The Equal Protection Clause of the Fourteenth Amendment simply requires that similarly situated persons be treated alike.  *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997).  Kingery fails to state an equal protection claim, however, because he has not alleged or shown that he has been treated differently than other, similarly situated individuals.

Kingery also complains that the fetal tissue evidence was obtained in violation of his right to privacy under the Fourteenth Amendment.  To the extent that he complains about a search and seizure of evidence, Kingery does not establish that he has a constitutional right to privacy apart from the one found in the Fourth Amendment and made applicable to the states through the Fourteenth Amendment.  *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (observing that the Fourth Amendment's "right of privacy" has been declared enforceable against the States through the Due Process Clause of the Fourteenth Amendment).  For reasons discussed below, Kingery is not entitled to federal habeas corpus relief under the Fourth Amendment.

### 3.   Fourth Amendment

Kingery contends that the fetal tissue evidence was seized illegally, without a warrant or court order, in violation of the Fourth Amendment.  Because Kingery had an opportunity to litigate this issue in state court, the respondent argues that any Fourth Amendment claim

is barred from habeas corpus review under the holding in *Stone v. Powell,* 428 U.S. 465 (1976).  In *Stone v. Powell*, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. The United States Court of Appeals for the Fifth Circuit has since interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (citing *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a [F]ourth [A]mendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id*.

Kingery does not show that he was denied a full and fair review of any proposed Fourth Amendment claim.  As noted above, Kingery's counsel made a motion to suppress this evidence at trial under various theories and there was a suppression hearing on the issue conducted outside the jury's presence. (Court Reporter's Record, vol. 4, 161-78).  Kingery's counsel did not raise a Fourth Amendment argument at this hearing,[9] but he had an

---

[9]    As noted above, Kingery's counsel explained in his state court affidavit that he did not present a Fourth Amendment argument in his motion to suppress because he did not believe that Kingery had standing to challenge the evidence. *See Ex parte Kingery*, No. 31,541-03 at 118. It is worth noting that Kingery makes no effort to show that he had any standing to raise a Fourth Amendment challenge regarding the fetal tissue evidence seized from the Florida clinic where the complainant had her abortion or that he personally does have reasonable expectation of privacy in the place searched. *See Rakas v. Illinois*, 439 U.S. 128 (1978); *see also United States v. Daniel*, 982 F.2d 146 (5th Cir. 1993) (explaining that, since *Rakas*, "standing" is "shorthand for the existence of a privacy or possessory interest sufficient to
(continued...)

opportunity to present this type of claim if such an argument had been available.  From this record, the Court finds that Kingery was afforded sufficient opportunity for review of any proposed Fourth Amendment claim.  This opportunity for review is sufficient to trigger the *Stone* bar in this instance.  Therefore, Kingery's Fourth Amendment claims are precluded from federal habeas review.

### E.   Rulings by the Trial Court

Kingery contends that he is entitled to federal habeas corpus relief because the trial court abused its discretion by admitting certain evidence and by failing to rule on a *pro se* motion.  Kingery references in particular the trial court's decision to admit DNA evidence taken from fetal tissue and the trial court's alleged failure to rule on his *pro se* motion for new trial.  The Court examines these claim separately below.

### 1.   Evidentiary Ruling

Kingery complains that the trial court abused its discretion by admitting DNA evidence based on fetal tissue that Kingery claims was illegally seized from the Florida abortion clinic.  The respondent correctly notes that Kingery did not exhaust this claim by raising it on direct appeal or on state habeas corpus review.  Accordingly, the respondent argues that this claim is procedurally barred from federal habeas corpus review.  Kingery does not dispute that this claim is barred as the result of a procedural default and he does not demonstrate that he fits within a recognized exception.  Accordingly, the Court concludes

---

[9](...continued)
        assert a Fourth Amendment claim.").  Thus, he fails to demonstrate that he had a valid Fourth
        Amendment claim to make.

that this claim is precluded from federal habeas corpus review by the doctrine of procedural default.

Alternatively, the respondent argues that this claim is without merit because Kingery fails to show that the evidence was admitted in violation of the Constitution. The admissibility of evidence is a matter governed by state law. Even assuming there was an error,"federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Accordingly, a federal habeas corpus court will not grant relief from errors in a state trial court's evidentiary rulings, if any, unless those errors result in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied*, 466 U.S. 984 (1984)).

As noted above, the trial court admitted the DNA evidence following a hearing on Kingery's motion to suppress. Kingery has not demonstrated that the trial court erred in admitting the evidence. Even if admitted in error, "habeas corpus relief is proper only if the error is of such a magnitude that it resulted in 'fundamental unfairness.'" *Hafdahl v. Johnson*, 251 F.3d 528, 536 (5th Cir.) (quoting *Blankenship v. Estelle*, 545 F.2d 510, 516-17 (5th Cir. 1977)), *cert. denied*, 534 U.S. 1047 (2001). In that regard, "the erroneous admission of prejudicial evidence can justify habeas corpus relief only if it is material in the sense of a crucial, critical, highly significant factor." *Givens v. Cockrell*, 206 F.3d 306, 308-09 (5th Cir. 2001).

The DNA evidence, while not insignificant, was not crucial or critical in this case because it served only to corroborate the complainant's testimony that she and Kingery had sex when she was at an age where she lacked the legal capacity to consent. Kingery does not seriously dispute that this, in fact, occurred. Throughout this federal habeas corpus proceeding, Kingery has primarily attempted to argue that he and the complainant had a consensual relationship and, further, that he had legal defense to the sexual assault charge because he and the complainant were common law husband and wife when the sexual encounter occurred. Based on this record, Kingery fails to show that the DNA evidence was admitted in error or that, if it was, the admission of the evidence rendered his entire trial fundamentally unfair. Accordingly, Kingery is not entitled to federal habeas corpus relief on this issue.

### 2.    Failure to Rule on a *Pro Se* Motion

Kingery complains that the trial court abused its discretion by failing to rule on his *pro se* motion for new trial. The state habeas corpus court rejected this claim, finding that the trial court did not abuse its discretion in failing to rule on the disputed motion for new trial since the motion was never properly presented to the trial court for consideration. *See Ex parte Kingery*, No. 31,541-03 at 124. Accordingly, to prevail Kingery must show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Kingery makes no attempt to meet that burden.

As noted above, Kingery was represented by counsel at all relevant times of the proceeding and, having not invoked his right to proceed *pro se*, he had no right to hybrid representation.  Accordingly, the trial court was under no obligation to consider the *pro se* motion for new trial submitted by Kingery.  Even if the trial court did err by refusing to consider Kingery's motion, Kingery does not show that he would have prevailed on the proposed motion for new trial if the trial court had reviewed it.  According to the record, Kingery based his motion for new trial on allegations that he received ineffective assistance of counsel.  (Doc. #2, at 18-19).  For reasons discussed above, Kingery has failed to demonstrate a valid claim for ineffective assistance of counsel in this case.

Based on this record, Kingery has not established that the trial court abused its discretion or that he was otherwise harmed by any failure to rule on the *pro se* motion for new trial.  It follows that Kingery has failed to show that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  As with the other claims in his petition, this ground is without merit.  Because Kingery has  failed to establish a constitutional violation in connection with his conviction, or to otherwise show that he meets the criteria for federal habeas corpus relief under the governing standard found at 28 U.S.C. § 2254(d), Kingery's petition fails as a matter of law and the respondent is entitled to summary judgment.

**F.    Kingery's Request for Discovery**

Kingery has filed a motion for discovery in the form of interrogatories.  (Doc. #17).  Those interrogatories, styled as court-ordered "depositions," were submitted by Kingery

previously for the Court's review.   (Doc. #6, *Proposed Depositions*).   He also seeks

discovery of documents regarding a State Bar of Texas grievance proceeding that Kingery

filed against his trial attorney, a copy of his *pro se* motion for new trial, and a copy of his

state court trial, appeal, and habeas corpus transcripts.

Discovery is limited in habeas corpus proceedings.  "Rule 6 of the Rules Governing

§ 2254 cases permits discovery only if and only to the extent that the district court finds good

cause."  *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000);

*see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039

(2001).  "Good cause" may be found when a petition for a writ of habeas corpus "establishes

a *prima facie* claim for relief."  *Murphy*, 205 F.3d at 814.  Before authorizing discovery, the

Court must first conclude that the specific allegations in the petition "show reason to believe

that the petitioner may, if the facts are fully developed, be able to demonstrate that he is

confined illegally and is therefore entitled to relief."  *Id.*  In that regard, petitioner's factual

allegations "must be specific, as opposed to merely speculative or conclusory, to justify

discovery."  *Id.*  "Simply put, Rule 6 does not authorize fishing expeditions."  *Id.*; *see also*

*Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995).

In this instance, Kingery seeks answers to interrogatories posed to the complainant,

the prosecutor, the complainant's mother, Kingery's former employer, Kingery's trial

counsel, a witness named "Eillien Schilling," and the complainant's grandmother. (Doc. #6,

*Proposed Depositions*).   Kingery does not, however, demonstrate how answers to the

proposed questions will establish a *prima facie* claim for federal habeas corpus relief.

45

Likewise, Kingery requests copies of various documents and copies of his state court records without attempting to show with specificity which of those records are relevant to his claims or how they would enable him to prevail. Thus, Kingery's discovery request falls far short of the showing of good cause necessary to permit discovery under Rule 6.

Kingery has not sought a continuance to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure. To the extent that Kingery's request could be construed as a motion for a continuance to conduct discovery under Rule 56(f), his allegations and proposed questions fail to show how any of the requested information has the potential to raise a genuine issue of material fact. *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005) ("[A] party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment.") (quoting *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 719-20 (5th Cir.1999) (internal citations and quotations omitted)). Accordingly, Kingery's motion for discovery is denied.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that

'[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has

stated a valid claim.   Accordingly, the petitioner is not entitled to a certificate of appealability under the governing standard found in § 2253.

## V.     CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.      The petitioner's motion for summary judgment (Doc. #15) is **DENIED**.

2.      The respondent's motion for summary judgment (Doc. #16) is **GRANTED**.

3.      The petitioner's motion for discovery (Doc. #17) is **DENIED**.

4.      The petitioner's application for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

5.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on **May 23, 2006.**

Nancy F. Atlas
United States District Judge